Hon. Ronald B. Leighton
Hearing Date: November 11, 2016

## UNITED STATES DISTRICT COURT
### for the
## WESTERN DISTRICT OF WASHINGTON

TIMOTHY ROBERTSON,
individually,

        Plaintiff,

v.

KITSAP COUNTY, a Municipal Corporation
organized under the laws of the State of
Washington; CONMED, INC., a Foreign
Corporation; ARLEN JOHNSON, A.R.N.P.;
BARBARA MULL, R.N.; SUE STEVENS,
R.N.; AND BRUCE KALER, M.D.,

        Defendants.

NO.  15-cv-05422-RBL-DWC

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT; MOTIONS TO
STRIKE, & MOTION TO SUPPLEMENT
DEPOSITION UNDER FRCP 32(a)(6)

I.      PURPOSE OF PLEADING

      COMES NOW the plaintiff, and responds to Defendants' motion for Summary Judgment, moves to Strike the Declaration of Dr. Robert E. Johnson, DDS, moves to strike irrelevant medical care provided and irrelevant criminal history of plaintiff, and moves that defendants be required to supplement the deposition of Timothy Robertson that in fairness should be considered with the parts introduced under FRCP 32(a)(6).

II.     FACTUAL BASIS

     i.  Reference to Plaintiff's Summary Judgment Statement of Facts

      Plaintiff has already presented a detailed and supported statement of facts in his motion for summary judgment filed with the court on October 19, 2016. To avoid unnecessary duplication, we

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

incorporate that statement of facts and supporting declarations and exhibits documents by this reference. We will refer to that record as it was identified in that motion, and also make reference to the documents submitted by Defendants.

  ii. Factual Basis for Motion to Strike Declaration of Dr. Robert Johnson, DDS.

  Defendants rely on the Declaration of Dr. Robert E. Johnson, DDS. His declaration is the first revelation of his involvement in this case. Please see the Declaration of Karen Alfano. As he has never been revealed in any manner of discovery, the court should strike from consideration the document and his testimony.

  iii. Factual basis to strike irrelevant medical issues of plaintiff which were not ignored by defendants.

  Defendants have detailed a number of medical complaints presented by Mr. Robertson, including chest pain, a hurt foot, prostate issues, shingles, hypertension, sore throats, bronchitis, and sinus infections. Much of the factual summary and declaration testimony of the defendants address these unrelated complaints. Apparently the purpose was to show that defendants did not ignore ALL of his medical needs. As will be developed below, these unrelated complaints are inadmissible, and are not material to the issues now before the court: dental neglect.

  iv. Factual basis to strike irrelevant past criminal behavior by plaintiff.

  Defendants have stressed Mr. Robertson's criminal history and provided multiple pages of his deposition relating to Mr. Robertson recounting his various arrests, and the underlying facts which led to arrest. As will be developed below, these facts are inadmissible, and are not material to the issues now before the court: deliberate indifference to serious dental needs.

  v. Factual basis for Request for full transcript of Deposition of Timothy Robertson.

  The Declaration of Mr. Rosenberg contains only portions of the deposition transcript of Plaintiff Robertson, despite his declaration stating that a true copy of the deposition is attached. Plaintiff requests under FRCP 32(a)(6) that the entire deposition be produced, and plaintiff be allowed further time to reference it in a subsequent pleading to the court. Many of the quoted answers appear to be truncated. For example, at page 105, Robertson was starting to describe the efforts he had gone through to get attention to his dental needs. Page 106 was omitted. For another example, when explaining why he did not want a catheter forced into his penis to address difficulty

**PLAINTIFF'S RESPONSE**
**TO DEFENDANTS' SUMMARY**
**JUDGMENT MOTION** **- Page 2 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

1  urinating, the discussion is truncated.  Rosenberg Declaration, Exhibit 1, page 86.  In fairness, the

2  entire deposition should be supplied to Plaintiff Robertson, to determine all instances of omission

3  of pertinent testimony.

4        vi.    Counter-statement of Facts

5        Plaintiff submits this counter statement of facts to defendant's statement of facts contained

6  in their motion for summary judgment:

7  1.    Defendants' Brief, page 4, line 9:

8        "In a dental screening, ARNP Johnson indicated that Plaintiff had two teeth missing,
         but the condition of Plaintiff's teeth and gums were generally good."

9  They omit that the same document indicates "Pain/discomfort: YES."  Exhibit 7 to

10  Declaration of Arlen Johnson, Health Assessment form, dated 6/27/12.

11

12       Further, the actual contemporaneous chart note, Otto Declaration, Exhibit C, page 2, had the

    additional findings listed, which also included a loose filling:

13
        (O)[Objective] .... Dental - filling in place, but looks loose.  No inflamation or
14      swelling.  (A) [Assessment]: ...dental pain.

15  2.    Defendants' Brief, page 4, line 20:

16       "Plaintiff did not mention his tooth again for about a month because he erroneously
         assumed that he had been placed on a dental treatment list by the jail, Rosenberg
17       Decl. Ex. 1 at 51-52, 96, 105, but he never mentioned his false belief to anyone at the
         jail or Conmed." [emphasis in original].
18
         In fact, at page 105 of his deposition, he stated that it was not true that he had told no one,
19
    as he "told everyone."  He explained why he did not fill out another written form: "I wasn't looking
20
    for pain medicine.  I was looking for a dentist, which I made quite obvious that I needed."  Everyone
21
    in his cell knew he needed treatment.  Declarations of Sanguinet, Theurich, Feliciano, Phillips,
22
    Pritchard, Zeliting.  Also in the record, was the fact that he had made "countless complaints to
23
    nurses."  Health Services Request dated August 1, 2012, Exhibit 9 to Decl. of Arlen Johnson.
24
25  3.    Defendants' Brief , page 4, line 21:

26       On June 22, 2012, plaintiff alleges he broke a tooth by biting into a hard object while
         eating. (Citation omitted).  Plaintiff alleges he submitted an HSR on this date
27       (citation omitted) and was seen by Bruce Kaler, MD, who prescribed Ibuprofen for
         the pain (Citation omitted).
28
         They omit the fact that the allegation was that Defendant Kaler did not prescribe this until

    July 23, 2012.  Plaintiff's complaint, Dkt 1, ¶ 2.17, Robertson Declaration, Exhibit A, third page.

**PLAINTIFF'S RESPONSE**
**TO DEFENDANTS' SUMMARY**
**JUDGMENT MOTION**         **- Page 3 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

4.   Defendants' Brief , page 6, line 3:

"The furlough process is not complicated."

Nowhere is there any proof or inference that Mr. Robertson was told how to so apply, except that Defendant Mull wrote in response to the medical request of 6/25/12 "you can apply for a furlough through the courts," and in response to a medical request of 7/24/12, she wrote "you can see your dentist and apply for a furlough..." Otto Declaration, Exhibit C, pp 10, 12.  No forms, apparently readily available to jail staff, Declaration of Roxanne Payne, ¶4, were ever provided to Robertson for this purpose.  Robertson made the request of his attorney, but nothing came of it.. Robertson Declaration, page 2, line 11.  In the Declaration of Roxanne Payne, ¶¶ 4, 6,  she admits that the staff will assist an inmate in coming before the court for his request.  She further admits that it is the County's *policy* of requiring a represented person to get his attorney to make the request. ¶¶ 5, 8. Defendants' Brief, page 5, line 18.

5.   Defendants' Brief, page 6:

"According to Plaintiff, he requested his attorney to obtain the desired furlough, and his attorney did not seek the desired furlough."

The full quotation of ¶ 2.15, of the complaint, cited by Defendants, continued:

"...his attorney felt it would be futile to try, as there was an out of state hold on his release, so no furlough could be arranged by Plaintiff TIMOTHY ROBERTSON.

6.   Defendants' brief, page 7:

"Sue Stevens responded to the [August 1, 2012] grievance by pointing out that Plaintiff had been  seen many times, had received medical treatment, that there had not been  deliberate indifference, and that Plaintiff was on a list to be seen by a dentist." [emphasis added].

See also the written assurance to plaintiff that he was on "the dental list to be sent to the dentist," signed by Ms. Stevens on August 15, 2015, Otto Declaration, Exhibit C, page 16.

In fact, there was no "dental list" as none has been supplied either in discovery, nor in the public disclosure requests.  In fact, Ms. Stevens states that they had no dentist, despite looking for one for "a couple of months in 2012," Sue Stevens Declaration, ¶ 7, after terminating the services of their prior dentist.  She does not specify if the "couple of months" were in early 2012, or after the extradition of Plaintiff Robertson on September 19, 2012. Otto Declaration, Exhibit C, p. 36.  She does not state when that prior dentist was terminated, except that it was before Robertson had his

**PLAINTIFF'S RESPONSE
TO DEFENDANTS' SUMMARY
JUDGMENT MOTION       - Page 4 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

broken tooth and emergent pain. It could have been in 2011 or 2010, or even before. Defendant Barbie Mull also submitted a declaration on this topic, stating also that they had terminated the prior dentist, but also not stating when that occurred. She puts the time of seeking another dental provider as "during that timeframe" of Mr. Robertson's complaint of June 27, 2012, without further definition, implying that they had been without a dentist for awhile. Mull Declaration, p. 2.

There is proof of when Plaintiff Robertson was actually put on a dental list, and it was not until August 21, 2012, as we have that document seeking authority for an outside referral from corporate authorities, Dr. Rhodes, faxed on an unknown date. Sue Stevens Declaration, Exhibit 1, Otto Declaration, Exhibit C, pages 22, 23.   This was after the intervention letter from Plaintiff Robertson's attorney. Otto Declaration, Exhibit A.

7.   Defendant's Brief, page 7, line 24:

> "On August 3, 2013, ARNP Johnson again saw plaintiff in the clinic. (Citation omitted). Nurse Johnson noted the loss of a portion of the filling in tooth #15 and that some enamel was missing from the posterior of #16. The tooth was only chipped with a portion of filling missing. There was no exposed nerve and the gingiva was within normal limits." Benign exam.

In fact, the actual record of Defendant Johnson from that date states that "can not fully visualize area," which is omitted from Defendants' facts. Defendant Arlen Johnson Declaration, Exhibit 2, (entry from 8/3/12), Otto Declaration, Exhibit C, page 36. Defendant Johnson does not remember using a dental mirror to see the interior of Mr. Robertson's mouth. Otto Declaration, Exhibit E, page 16. There is no dental equipment at the jail. There are no dental tools, and there is no dental chair. Otto Declaration, Exhibit D, pages 15-16. He is not a dentist. Otto Declaration, Exhibit E, page 26.

8.   Defendant's Brief, page 8, line 21:

> "On August 21, 2012, Dr. Kaler and Nurse Stevens submitted a request for authorization to have an outside dentist treat Plaintiff. (Citation omitted). The request indicated that the condition of plaintiff's tooth had begun to interfere with Plaintiff's activities of daily living and therefore required attention. These were new findings, apparently occurring soon after Plaintiff had filed down his own tooth with a spoon." [emphasis added].

In fact, that Plaintiff had to resort to self dentistry was revealed in the August 1, 2012 grievance, Otto Declaration, Exhibit C, p. 14, so that desperate measure was taken at some time before August 1.

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

After August 1, 2012, there were actually two examinations, both of which claimed to discount the effect of the broken tooth on Mr. Robertson's life.  As mentioned, Defendant Arlen Johnson had examined Plaintiff Robertson on August 3, 2012.  His full chart note states:

> "MR [Medical Request] 8/1/12 c/o [complains of] teeth pain upper left rear.  (O) [Objective findings] filling in #15 [with] loss of some face anteriorly. #16/ missing piece on posterior can not fully visualize area. No gingival lesions. (A) [Assessment] c/o [complains of] pain.  Benign exam.  (P) [Plan] Salt water rinses.

On August 3, 2012, Corrections Officer Chavez, investigating the formal grievance filed by Plaintiff Robertson, interviewed Defendant ARLEN JOHNSON, ARNP, who is quoted as follows:

> "Robertson has a chip of #15 tooth with the filling in place.  The nerve is not exposed, It is not emergent that Robertson go to a dentist."

Otto Declaration, Exhibit C, page 18.

On August 5, 2012, Plaintiff Robertson submitted yet another CONMED, INC., Health Services Request Form, in which he stated:

> "My broken tooth is still very painful, must be an exposed nerve, well over a month, my last visit I was told by Johnson I can't help you.  Why?"

Otto Declaration Exhibit C, page 17.

On August 7, 2012, Plaintiff Robertson submitted yet another CONMED, INC., Health Services Request Form, in which he stated:

> "The pain in my broken tooth is severe causing my head aches and eye aches.  I need it fixed. This has gone on for well over a month."

Otto Declaration, Exhibit C, page 20.

On August 9, 2012, the two preceding Heath Service Requests resulted in a clinic visit with both Defendant SUE STEVENS, RN and Defendant ARLEN JOHNSON, ARNP, and another examination by Defendant ARLEN JOHNSON, ARNP, in which he noted on the August 5, 2012 Health Services Request form (as best his handwriting can be read):

> "Exam: #15 has intact, filling [with] broke area ant[erior]. #16 ? Missing enamel posterior aspect.  However can not fully visualize, gingiva normal no lesions seen. Plan: <u>No action</u>." [emphasis added]

This plan of "no action" was also confirmed by Defendant Johnson in his deposition at Otto Declaration, Exhibit E, page 26.  In fact, he had no idea how Robertson got to a dentist, as he was not planning to do anything different. Otto Declaration, Exhibit E, page 35, line 20.

Contrary to Defendant's briefing, there were no new findings, and nothing had changed since

**PLAINTIFF'S RESPONSE**
**TO DEFENDANTS' SUMMARY**
**JUDGMENT MOTION**          **- Page 6 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

the last examination, except for the arrival of the August 16, 2012 letter from Plaintiff's attorney, Otto Declaration, Exhibit A.  Under the scrutiny of a civil rights lawyer, Defendants Kaler and Stevens submitted the request for service up the chain for approval.

9.   Defendants' Brief, page 9:

> "Dr. Hutchinson indicated that the tooth was fractured and that Plaintiff could either get a root canal or have the tooth extracted."

In fact, his August 28, 2012 assessment had more extensive findings than referenced by the Defendants, as shown in Otto Declaration, Exhibit F.:

A [Assessment]: Irrev[ersible] pulpitis. Fracture #14[1].

The irreversible pulpitis was an ongoing infection for which antibiotics were prescribed.  It was an important diagnosis which should not have been omitted.

On September 11, 2012, Plaintiff Robertson was transported for a root canal with Dr. Huey.  Dr. Huey noted his findings:

Caries, fractured tooth, P in perforation.  Caries, irreversible pulpitis.

He listed his orders and recommendations as follows:

Root Canal, build up, crown.

Dr. Huey then performed the root canal.  Otto Declaration, Exhibit C, page 29.

Plaintiff Robertson was returned to Dr. Hutchinson for preparation for a crown on September 18, 2012, and a temporary crown was placed.  Otto Declaration, Exhibit F.  A permanent crown was ordered, but on September 19, 2012, Robertson was taken from the State by extradition.  Otto Declaration, Exhibit C, page 36.

III.    AUTHORITIES AND ARGUMENT

i.   Summary Judgment Generally

While, generally, issues of material fact are for trial, the court may grant summary judgment under FRCP 56 if there is no  genuine dispute of material fact and the movant is entitled to judgment as a matter of law.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture*, 18 F.3d

---

[1]    Not #15 or #16 as Defendant Johnson, not a dentist, had assessed.

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

**PLAINTIFF'S RESPONSE
TO DEFENDANTS' SUMMARY
JUDGMENT MOTION        - Page 7 -**

1468, 1471 (9th Cir.1994). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action. FRCP 1, *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986). Before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872), cited with approval in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

While a court is not to weigh the evidence in a summary judgment motion, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986), there is no issue for trial unless there is sufficient evidence, favoring the nonmoving party, for a jury to return a verdict for that party. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, at 288–289, 88 S.Ct. 1575, at 1592, 20 L.Ed.2d 569 (1968).

Summary judgment should be granted where the evidence is such that it "would require a directed verdict for the moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986), *Sartor v. Arkansas Gas Corp.*, 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967 (1944).

Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). When a summary judgment motion is supported as provided in Fed.R.Civ.P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his or her response, by affidavits or as otherwise provided in Fed.R.Civ.P. 56, must set forth specific facts showing there is a genuine issue for trial. See Fed.R.Civ.P. 56(e)(2).

A "material" fact is one which is "relevant to an element of a claim or defense and whose

PLAINTIFF'S RESPONSE
TO DEFENDANTS' SUMMARY
JUDGMENT MOTION        - Page 8 -

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d at 630 (9th Cir. 1987).

      ii.  <u>Motion to Strike the Declaration of Robert Johnson, DDS.</u>

The declaration of expert Robert Johnson, DDS is a complete surprise to Plaintiff. He was not disclosed in initial disclosures, nor ever revealed pursuant to FRCP 26(a)(2). Plaintiff has searched the documents looking for such reference, and can find none. Declaration of Karen Alfano. The discovery period is closed. Plaintiff's counsel has searched emails looking for any such reference, and can find none. The Scheduling Order stated all discovery was to be completed by September 19, 2016.

FRCP 37(c)(1) states that undisclosed information or witnesses may not be used at any hearing or trial, unless the failure was justified or harmless. Plaintiff cannot see how either may be possible at this time. See also *Yeti by Molly v. Decker Outdoors Corp.*, 259 F.3d 1101 (9th Cir., 2001). The court should summarily strike and disregard any information put forward by this expert witness, as well as any argument based on his opinions.

      iii.  <u>Motion to Strike reference to unrelated medical conditions.</u>

Defendants have detailed a number of medical complaints presented by Mr. Robertson, including chest pain, a hurt foot, prostate issues, shingles, hypertension, sore throats, bronchitis, and sinus infections. Much of the factual summary and declaration testimony of the Defendants address these unrelated complaints. They would be subject to a Motion in Limine at trial and should be likewise excluded here.

Federal Rule of Evidence (FRE) 401 defines evidence as relevant if it has a tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. At issue in this case is whether Defendants have been deliberately indifferent to as serious medical or dental need of Plaintiff, and the complaint focuses on a dental fracture, resulting in serious pain and disability, and the refusal of Defendants to timely address critical dental care. Whether or not they treated appropriately toenail fungus, whether Plaintiff rejected forced entry of a catheter into his penis, whether they took serious an issue of chest pain, and whether they spent resources on such care is of no consequence to the issues in this case, and

**PLAINTIFF'S RESPONSE**
**TO DEFENDANTS' SUMMARY**
**JUDGMENT MOTION**    **- Page 9 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

1   would be (and have been) a waste of the time of the court. Plaintiff has brought no claim based on
2   those issues. The court should disregard all materials addressing other issues unless Defendants can
3   show relevance. That they were qualified to provide medical care, and actually provided medical
4   care on other instances and issues, is not relevant to their lack of competence to provide dental care,
5   and refusal to get him to a dentist in a timely manner.

6        Even if marginally relevant, FRE 403 permits exclusion, for considerations of unfair
7   prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needless
8   presentation of cumulative evidence.

9        iv.   <u>Motion to Strike inadmissible details of criminal behavior</u>

10       That Defendant is incarcerated for at least an allegation of criminal behavior is inherent in
11   any claim for violation of constitutional rights in a prisoner claim under the Fourteenth Amendment
12   or the Eighth Amendment under 42 USC § 1983. The very nature of this claim, and §1983 itself,
13   is designed as a prophylactic measure to protect prisoners, one of the most vulnerable of populations
14   to these kinds of abuses. Prisoners come with baggage, yet they nonetheless have constitutional
15   rights to proper dental care.

16       Defendants have detailed a number of Plaintiff's past act and crimes, and have submitted
17   many pages of documents showing past drug addiction, thefts, bad checks, and general bad behavior,
18   which Plaintiff Robertson candidly admitted. Using past wrongs or crimes is prohibited under FRE
19   404(b) in a civil action to prove character.

20       There may be admissibility of past <u>convictions</u> under FRE 609(a) to consider and weigh the
21   testimony of the Plaintiff, but only within the limitations of FRE 609(b). ER 609 does not open
22   every instance of criminal behavior for consideration, nor should it allow inquiry into the details of
23   each conviction. Not every theft conviction involves dishonest or false statement under the Federal
24   Rules. As stated in *U.S. v. Ortega*, 561 F.2d 803 (1977):

25       We adopt the views of the Third Circuit in *Toto* [Government of Virgin Islands v.
        Toto (3d Cir. 1976) 529 F.2d 278] because it accords with the expressed intent of the
26       draftsmen of Rule 609, limiting the "dishonesty and false statement" language to
        those crimes that involve some element of misrepresentation or other indicium of a
27       propensity to lie and excluding those crimes which, bad though they are, do not carry
        with them a tinge of falsification.
28
        Human experience does not justify an inference that a person will perjure himself
        from proof that he was guilty of petty shoplifting, as *Toto* recognizes. An absence of

**PLAINTIFF'S RESPONSE**
**TO DEFENDANTS' SUMMARY**
**JUDGMENT MOTION     - Page 10 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

respect for the property of others is an undesirable character trait, but it is not an indicium of a propensity toward testimonial dishonesty.

*Accord, U.S. v. Glenn*, 667 F.2d 1269 (1982).

As impeachment is the purpose of FRE 609, the court should look at what role Mr. Robertson's credibility plays in this case. He says he had a broken tooth and pain, which was corroborated by contemporaneous statements of Mr. Robertson, and by those present with him at the time, and by even the Defendants cursory attempts at examination, and by the ultimate dental examinations and tardily provided care. Plaintiff's credibility is not central to this case.

Accordingly, we ask that the court strike or limit use of such information in consideration of this summary judgment motion, absent proper foundation.

v.  Substantive Law on 42 U.S.C. §1983 claims

This claim under 42. U.S.C. §1983 is for deliberate indifference for the medical and dental needs of a prisoner.  That statute provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

The United States Constitution mandates humane treatment for prisoners. The Eighth Amendment expressly prohibits cruel and unusual punishments. This prohibition is made applicable to the States by the Fourteenth Amendment due process clause. *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983, 77 L. Ed. 2d 605 (1983).

Pretrial detainees are protected not just from cruel and unusual punishment, but, not having been convicted of crime, from any punishment whatsoever. *Ingraham v. Wright*, 430 U.S. 651, 671–672, n. 40, 97 S.Ct. 1401, 1412–1413, n. 40, 51 L.Ed.2d 711 (1977); *Bell v. Wolfish*, 441 U.S. 520, 537, 99 S. Ct. 1861, 1873, 60 L. Ed. 2d 447 (1979).  Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Because pretrial

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SUMMARY JUDGMENT MOTION**          **- Page 11 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, the same standards apply. *Frost v. Agnos*, 152 F.3d 1124, 1128 (1998).

The prohibition on cruel and unusual punishment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ," *Jackson v. Bishop*, 404 F.2d 571, 579 (C.A.8 1968). In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976). Deliberate indifference may be shown where prison officials or practitioners "deny, delay or intentionally interfere with medical treatment." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.1988), *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 896 (N.D. Cal. 2013).

Generally, liability under 42 U.S.C. §1983 is individual to each person who violates constitutional standards. However, if a policy or custom of the municipality is the cause of the deprivation, then liability may attach to the municipality itself. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Monell, supra*, at 694, 98 S.Ct., at 2027. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403–04, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997).

As stated in *Monell* itself:

> Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978).

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

vi.    Non delegable nature of obligation to provide health care to plaintiff

Defendant Kitsap County has a non-delegable duty to provide appropriate health care for detained inmates.  This has long been established under Washington law.  As stated in *Gregoire v. Oak Harbor*, 170 Wn.2d 628, at 635; 244 P.3d 924 (2010):

> Washington courts have long recognized a jailor's special relationship with inmates, particularly the duty to ensure health, welfare, and safety. In *Kusah v. McCorkle, 100 Wash. 318, 325, 170 P. 1023 (1918)*, this court acknowledged that a sheriff running a county jail "owes the direct duty to a prisoner in his custody to keep him in health and free from harm, and for any breach of such duty resulting in injury he is liable to the prisoner or, if he be dead, to those entitled to recover for his wrongful death." The duty owed "is a positive duty arising out of the special relationship that results when a custodian has complete control over a prisoner deprived of liberty." *Shea v. City of Spokane*, 17 Wn. App. 236, 242, 562 P.2d 264 (1977), aff'd, 90 Wn.2d 43, 578 P.2d 42 (1978); *see also Caulfield v. Kitsap County, 108 Wn. App. 242, 255, 29 P.3d 738 (2001)*. In *Shea*, which involved a municipal jail, the court noted this duty of providing for the health of a prisoner is nondelegable. *17 Wn. App. at 242.*

RCW 70.48.071 provides:

Standards for operation — Adoption by units of local government.

All units of local government that own or operate adult correctional facilities shall, individually or collectively, adopt standards for the operation of those facilities no later than January 1, 1988. Cities and towns shall adopt the standards after considering guidelines established collectively by the cities and towns of the state; counties shall adopt the standards after considering guidelines established collectively by the counties of the state. These standards shall be the minimums necessary to meet federal and state constitutional requirements relating to health, safety, and welfare of inmates and staff, and specific state and federal statutory requirements, and to provide for the public's health, safety, and welfare. Local correctional facilities shall be operated in accordance with these standards.

RCW 70.48.130[2] provides, in pertinent part:

Emergency or necessary medical and health care for confined persons—Reimbursement procedures—Conditions—Limitations.

(1) It is the intent of the legislature that all jail inmates receive appropriate and cost-effective emergency and necessary medical care. Governing units, the health care authority, and medical care providers shall cooperate to achieve the best rates consistent with adequate care.

(7) Under no circumstance shall necessary medical services be denied or delayed because of disputes over the cost of medical care or a determination of financial responsibility for payment of the costs of medical care provided to confined persons.

---

[2] This statute has been amended by the 2015 legislature as to payment options for inmate medical care.  It changes none of the cited provisions, except that subsection (7) is now (8).

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

**PLAINTIFF'S RESPONSE
TO DEFENDANTS' SUMMARY
JUDGMENT MOTION        - Page 13 -**

As was stated in *Shea v. City of Spokane*, 17 Wn. App. 236, 242, 562 P.2d 264 (1977), aff'd, 90 Wn.2d 43, 578 P.2d 42 (1978):

> When a city takes custody of a prisoner, it must provide health care for that prisoner. [citation omitted]. This is a positive duty arising out of the special relationship that results when a custodian has complete control over a prisoner deprived of liberty. The extent of this control is well illustrated in this case by the jailer's denial of plaintiff's request to telephone a doctor. It is evident to this Court that the nature of the relationship is such as to render nondelegable the duty of providing for the health of a prisoner. Stated another way, <u>the duty is so intertwined with the responsibility of the City as custodian that it cannot be relieved of liability for the negligent exercise of that duty by delegating it to an 'independent contractor' physician.</u> [emphasis added]

This is a based on a very long recognized obligation.  As was stated in *Kusah v. McCorkle*, 100 Wash. 318, 323, 170 P. 1023, 1025 (1918):

> Hence it is plain that the sheriff's duties in regard to prisoners or others in his lawful custody is twofold, one to the state to keep and produce the prisoner when required, and the other to the prisoner to keep him in health and safety.

McPhee v. U.S. Fid. & Guar. Co., 52 Wash. 154, 157, 100 P. 174, 175 (1909) recognized:

> As to the duties of a sheriff, the Washington State Supreme Court long ago recognized: [H]e owes a duty to his prisoner to keep him in health and free from harm, and for any breach of such duty resulting in death or injury he is liable to the prisoner, or, if he be dead, to those entitled to recover for his wrongful death.

Not only is medical care required, but dental care as well.  The courts recognized decades ago that "Dental care is one of the most important medical needs of inmates." *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981), *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) .

Here, the County entered into a contract with Conmed. Inc. to provide dental and medical care to inmates.  As the law plainly states, and as *Shea* held, the County cannot delegate away its responsibilities to protect Plaintiff Robertson.

vii.   Furlough

Defendant Kitsap County, and its contractor, Conmed, Inc., and its employees, cannot shirk the responsibility to provide health care by delegating it further to Plaintiff Robertson or his public defender, by saying he can get the dental care he needs if and only if he can arrange his own furlough (and payment).  It was not his public defender's obligation to seek such care for Plaintiff; it was the duty of Kitsap County and its contractor, Conmed, Inc., and its employees, the Defendants, to do so. The suggestion he seek a furlough was just a means to delay and deny care, and to shirk the expense

**PLAINTIFF'S RESPONSE
TO DEFENDANTS' SUMMARY
JUDGMENT MOTION**   **- Page 14 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

of care imposed by statute and constitution. They asked him to seek this relief from the court. As Plaintiff's public defender correctly concluded, it would be futile to seek such a release with an extradition hold in place, and he refused Plaintiff's request. Furlough without the assistance of the attorney was not an option to Plaintiff.

> These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.

*Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). The law recognizes that inmates cannot secure their own healthcare while incarcerated. They are helpless to do so.

Defendants' position in their motion is that it was Robertson's own fault, or his attorney's fault, that Robertson did not get dental care, as furlough procedures were available to him. If the government cannot shift responsibility for medical care to a contractor, *Shea v. City of Spokane,* 17 Wn. App. 236, 242, 562 P.2d 264 (1977), aff'd, 90 Wn.2d 43, 578 P.2d 42 (1978), they cannot shift responsibility to another, particularly one who is not contractually or morally obligated to provide medical care. Lt. Payne's admission that this is the *policy* of the County is significant in the context of 42 U.S.C. §1983 claims, as it invokes agency liability under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 201, 856 L.Ed.2d 611 (1978). The effect of deflecting responsibility to Robertson or to his attorney, is that the Defendants did not take ownership that this was their duty, and were indifferent to his plight, and delayed and denied care to a serious dental emergency, and it was the policy of Kitsap County and CONMED, Inc. that it be so.

Further, Lt. Payne's Declaration makes clear that it is the jail staff policy to provide the forms to unrepresented inmates and will facilitate their coming before a court to make furlough requests. Her declaration states that an inmate must request a furlough request form, and it will be provided. Defendant Mull knew he needed a furlough from the courts, and twice in writing suggested he seek one, but neither provided the forms, nor advised Robertson it was possible to get them on request.

viii.    <u>No dental care was available in the jail facility</u>

There was simply no dental care offered to Plaintiff inside the facility. The plan for care as of August 9, in the handwriting of Defendant Arlen Johnson was: no action. Otto Declaration

**PLAINTIFF'S RESPONSE
TO DEFENDANTS' SUMMARY
JUDGMENT MOTION        - Page 15 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

Exhibit E, page 26. Further, the Defendants told Plaintiff that they are not dentists, wondering what they wanted him to do, explaining why he was getting no more care than salt water rinses and Ibuprofen, which he could not take. Robertson Declaration, page 2. There was no dental equipment even available to assist in even an examination. Otto Declaration, Exhibit D, pages 15,16. That there were no dentists available to address serious dental needs, over a long duration, was a policy choice by Conmed. When tolerated over long periods, despite the requirement of dental care in the contract, it was also a policy choice by Kitsap County. Plaintiff Robertson had even invoked the law of deliberate indifference, and cited it to the jail in his grievance of August 1, 2012. Otto Declaration, Exhibit C, pap 14,15. He had exhausted all his options to get relief from his pain, and to get dental care. Then came the attorney letter, intervening for relief. Otto Declaration, Exhibit A.

> ix. <u>Plaintiff's dental condition was sufficiently serious to invoke constitutional principles, and sufficiently serious to constitute cruel and unusual punishment.</u>

Plaintiff's broken tooth created an emergency, for which he sought help on 6/22/12, Robertson Declaration, Exhibit A, third page, and again on 6/25/12, Otto Declaration, Exhibit C, page 10. He immediately brought it to the attention of the Conmed, Inc. employees named in the complaint, stating that the pain IS severe. It left him with pain on contact with cold or heat, or pressure. It impaired his ability to eat. It was sharp, cutting his tongue. It left him with constant headaches which reached into his eyes. It was as painful as a prior compound fracture. Robertson Declaration, page 1. Defendant Arlen Johnson knew from 6/27/12 that the tooth had a filling which was left loose and unstable, and caused pain. Otto Declaration, Exhibit C, page 2.

Defendants are not dentists, but they looked in his mouth and apparently could not see his pain, though their notes indicate that the tooth could not be fully visualized. Otto Declaration, Exhibit C, page 15. They allowed salt water rinses and Ibuprofen, which he could not take. Otto Declaration, Exhibit C, page 21. They did not arrange for him to see a dentist. He had to perform self dentistry to smooth down the sharp filling. Robertson Declaration, page 2, Robertson Declaration, Exhibit A, page 1. In this manner they were able to delay and deny relief for approximately 60 days before there was any attempt to get dental care for Plaintiff, despite repeated requests for help. They acted only when under the scrutiny of a litigation attorney. Otto Declaration, Exhibit A. Only then, without any change revealed by any new examination, did they acknowledge

**PLAINTIFF'S RESPONSE**
**TO DEFENDANTS' SUMMARY**
**JUDGMENT MOTION**     **- Page 16 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

that it was emergent, and interfered with activities of daily living because of the pain, finally seeking authority to spend money for outside dental care. Otto Declaration, Exhibit C, pages 22, 23. When dentists finally were able to examine Plaintiff Robertson, they confirmed that he had irreversible pulpitis and needed either extraction or a root canal and crown, not ibuprofen or salt water rinses. Otto Declaration, Exhibit C, page 29.

       x.   <u>Defendants were deliberately indifferent to plaintiff's plight.</u>

      Conmed, Inc., and its employees Arlen Johnson, Barbie Mull, Sue Stevens, and Bruce Kaler violated their own contract with the County in denying Plaintiff Robertson dental care. Otto Declaration, Exhibit B, page 20. As there was no dental equipment, nor even a dental chair, and no staff dentist, Defendants never took this obligation to heart. Defendant Johnson told Robertson "I don't know what you want us to do, We are not dentists." Defendant Johnson was well aware of the pain, though minimizing it based on his unlicensed, cursory, and erroneous dental examination. He was not licensed to perform dental examinations under RCW 18.32.091, yet attempted to do so, and refused to accomplish an actual dental visit by a doctor qualified to diagnose and treat dental pain. He ignored Plaintiff's complaints of pain, and called the exam benign. He proposed no action, despite witnessing a broken tooth and complaints of headache from the tooth. When real dentists examined, they found irreversible pulpitis, warranting extraction or root canal and crown. Dr. Kaler knew that a broken tooth creates a risk of infection. Otto Declaration, Exhibit D, page 17-18. When previously working at an urgent care facility, when faced with a broken tooth, "we generally try and cover the risk of infection, and pain management, and refer them to a dental professional." As to the risk of infection, he stated:

> "[a broken tooth] creates a risk of infection at the wound site, like any open wound anyplace. This one is in a relatively, in an environment, I should say, of a lot of bacteria, compared to something on the surface of the skin that can be cleansed."

      Robertson had no way of knowing what their obligations were to him as a third party beneficiary under the County contract, but to save money, Conmed violated the contract to provide him needed dental care. The contract is a flat rate contract, Otto Declaration, Exhibit B, page 7, 10, indicating that any cost over-runs are the responsibility of the contractor. More perplexing, however, is that the flat rate contract places a premium on cost cutting, as every penny shaved from expense goes to corporate profit, and as may be shown by subsequent discovery, to employee and CEO

**PLAINTIFF'S RESPONSE
TO DEFENDANTS' SUMMARY
JUDGMENT MOTION**    **- Page 17 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

1   bonuses. Conmed's profits will be greater and not suffer decrease if its employees can delay and

2   deny necessary care for inmates like Plaintiff Robertson until his release. That does not meet its

3   obligations or the County's obligations to treat inmates, and the Plaintiff here, humanely.

4       While each of these Defendants knew they were the only manner in which inmates could get

5   care, or access to care, both medical and dental, Conmed, Inc. never told their medical providers

6   about their dental responsibilities under the Contract with Kitsap County. Defendant Arlen Johnson

7   had never been informed, Otto Declaration, Exhibit E, page 37, despite having been there since

8   before Conmed took over the contract in 2008. Otto Declaration, Exhibit E, page 9, Otto Declaration

9   Exhibit B, page 2. Defendant Dr. Kaler, while being there only a short period of time, likewise was

10  not informed of his dental responsibilities. Otto Declaration, Exhibit D, page 16. Conmed, Inc.

11  itself has a custom, practice or policy, which is deliberately indifferent to dental needs of its charges,

12  as contemplated by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018,

13  56 L. Ed. 2d 611 (1978).

14      Defendants' actions far exceeded mere medical negligence. The treatments provided were

15  easy and inexpensive, but ineffective, as has been shown, and as they well knew. Despite Plaintiff's

16  many complaints, grievances and medical kites, the ineffective treatments continued, and

17  significantly delayed effective dental treatment, and delayed implementation of real relief for

18  Plaintiff. There was no plan to take any action on Plaintiff Robertson's complaints except to delay

19  and deny real care until Plaintiff's pending exit from the facility. Defendants were subsequently

20  forced to take action. Otto Declaration, Exhibit A. When Plaintiff Robertson finally got to a dentist,

21  the professional recognized that he had irreversible pulpitis and needed either an extraction or a root

22  canal and crown. Otto Declaration Exhibit C, page 29. The plan for a crown was implemented, but

23  it still took weeks to place a temporary crown, on September 18, 2012, 88 days after the tooth had

24  broken. Otto Declaration, Exhibit F. Because of the initial delays, the permanent crown was not

25  placed, and he was extradited out of the Kitsap County Jail facility. Robertson Declaration.

26  Defendants would like to be guilty of mere dental negligence, as the caselaw on constitutional

27  deprivation requires more than negligence. Their argument ignores that fact that they are not

28  dentists, as they have pointed out to Plaintiff Robertson. Robertson Declaration. They have engaged

in a field for which they are not qualified. RCW 18.32.091 requires a license to practice dentistry.

**PLAINTIFF'S RESPONSE**
**TO DEFENDANTS' SUMMARY**
**JUDGMENT MOTION**    **- Page 18 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

RCW 18.32.020 defines the practice of dentistry as follows:

> A person practices dentistry, within the meaning of this chapter, who (1) represents himself or herself as being able to diagnose, treat, remove stains and concretions from teeth, operate or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the human teeth, alveolar process, gums, or jaw, or (2) offers or undertakes by any means or methods to diagnose, treat, remove stains or concretions from teeth, operate or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the same, or take impressions of the teeth or jaw, or [3-5 omitted as irrelevant].

They did not have even basic dental equipment such as dental mirrors or probes to even view the problem tooth, as it could not be "visualized." They did not have, and did not offer to Plaintiff Robertson any dental wax to help alleviate the pain or cover the sharp filling edge, as suggested by the attorney. Otto Declaration, Exhibit A. No X-rays were taken, and even when they knew they were acting outside their fields of practice, they did not refer in any timely manner to a dentist who could help Plaintiff Robertson with diagnosis or treatment, as was Dr. Kaler's routine practice when working in urgent care elsewhere. Otto Declaration, Exhibit D, page 17-18.   Worst of all, they persisted in a course of treatment which was ineffective, while in reality they were biding their time, delaying and denying care.

A case so directly on point as to resolve the issue is *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010).  In that case, Berry was serving a sentence in prison, but because of overcrowding, was housed temporarily in jail in Waushara County, Wisconsin.  He developed an unexpected serious toothache. The nurse and the doctor at the jail told him to take over-the-counter pain relievers, but they refused to refer him to a dentist. After about two months of serious pain, Berry was returned to a state facility where he promptly saw a dentist who performed a root canal the same day.  The dentist confirmed that the tooth was clearly necrotic.

We emphasize the facts of that case as they are so close to Mr. Robertson's experience.  The facts as stated at page 438 of the decision:

> Berry filed numerous complaints concerning a steadily-worsening toothache. As early as April 3rd, Berry asked to see a dentist about an ailing tooth, claiming that air, water, and food all caused him pain. On April 11th, Berry filed a complaint stating that he did not believe he could wait until his transfer back to a DOC facility to see a dentist. He wrote that nothing was helping his tooth and that he was "having constant pains [and] headaches." On April 13th, Berry again asked to see a dentist and complained that his tooth caused him continuous pain, headaches, and problems eating and sleeping. Again on April 18th, Berry complained that his tooth was

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SUMMARY JUDGMENT MOTION**         **- Page 19 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

causing him "a great deal of pain, and the worst headache I've ever had," and that he was "unable to drink water at times, or brush my teeth due to the [pain]." On April 21st, Berry asked his nurse whether he could be sent to an off-site dentist to address his increasing pain, and he complained that his pain medication was ineffective. Berry complained again on April 24th that he was in such pain that he had to chew food on only one side of his mouth, and he noted that the pain had affected his sleeping and eating. On April 29th, Berry complained that he had not been able to brush his teeth because cold water caused him intolerable pain. A few days later, on May 1st, Berry complained to the jail administrator that he needed to see a dentist. Berry filed this lawsuit on May 14th. He complained to the jail administrator again on May 18th, stating that he needed to see a dentist and that his requests had been ignored.

The facts of ineffective treatment as stated at page 438-439 of the decision:

Defendant Dave Reich–a registered nurse working for Health Professionals, Ltd., which contracted to provide medical and nursing services at the Waushara County Jail–received and replied to most of Berry's complaints. In response to Berry's numerous requests to see a dentist, Nurse Reich regularly responded that Waushara did not have a dentist on staff, that the Waushara County Jail's medical staff could treat only pain or infections, and that any dental work would be performed when Berry was transferred back to a DOC facility. At times Nurse Reich changed Berry's treatment or made suggestions to alleviate his pain, but he often merely reminded Berry that he had upcoming doctor appointments and that he was already receiving pain treatment (over-the-counter pain relievers). Other times, Nurse Reich simply replied that Berry's complaints had already been addressed.

Defendant Karen Butler, a physician also working for Health Professionals, examined Berry twice during his time at the Waushara County Jail. The record contains no evidence that Dr. Butler x-rayed Berry's teeth nor any details as to the methods used to examine Berry's teeth on either visit. On the limited record, it appears that Dr. Butler examined Berry only for infections or "dental emergencies." During her examination on April 17, 2008, Dr. Butler noted no such infections or emergencies. On April 24th, Dr. Butler examined Berry again, this time noting a filling in tooth No. 19 but nothing that would cause pain. On this second visit, Berry insisted on seeing a dentist. Dr. Butler refused to make a referral, apparently because Berry presented with nothing more urgent than unexplained severe pain. Instead, she recommended a different pain medication. Dr. Butler persisted in this course of treatment even after Berry complained that those medications were ineffective. She never contacted a dentist to examine Berry's teeth.

The facts of effective treatment as stated at page 439 of the decision:

Berry was transferred from the Waushara County Jail to a DOC facility on June 6th and had a "priority" appointment with a dentist on June 12th. According to his chart, Berry complained of pain in tooth No. 19 when he ate, when he brushed his teeth with cold water, and at night. The dentist's exam revealed that the pulp in tooth No. 19 was "clearly necrotic," and the dentist performed a root canal or pulpotomy–surgical removal of a portion of the tooth's pulp (the connective tissue within, containing blood vessels and nerve tissue)–to salvage the remaining pulp.

**PLAINTIFF'S RESPONSE**
**TO DEFENDANTS' SUMMARY**
**JUDGMENT MOTION**          **- Page 20 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

The court in *Berry* overturned a District Court dismissal of the claim on summary judgment. The court ruled that dental pain as presented was a serious medical need, and as to the official response to that need by the medical doctor :

> Although the doctor did not completely ignore plaintiff's pain, a doctor's choice of the "easier and less efficacious treatment" for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment. *Estelle*, 429 U.S. at 104 & n. 10, citing *Williams v. Vincent*, 508 F.2d 541 (2d Cir.1974); *Johnson v. Doughty*, 433 F.3d at 1013 (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective"); *Greeno*, 414 F.3d at 655 (noting that persistence in a course of treatment "known to be ineffective" violates the Eighth Amendment). A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir.2008) (reversing summary judgment for defendants where plaintiff did not receive treatment for painful broken nose for nearly two days), citing *Gutierrez v. Peters*, 111 F.3d 1364, 1371-72 & n. 6 (7th Cir.1997) (collecting cases). Also, as we explained in *Grieveson*, a non-trivial delay in treating serious pain can be actionable even without expert medical testimony showing that the delay aggravated the underlying condition. 538 F.3d at 779, distinguishing *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir.1996) (one-hour delay in responding to claim of injury by rape in prison did not rise to level of constitutional violation). In this context, courts may consider the "cost of treatment alternatives [when] determining what constitutes adequate, minimum-level medical care," *Johnson*, 433 F.3d at 1013, citing *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir.1999), "but medical personnel cannot simply resort to an easier course of treatment that they know is ineffective." *Johnson*, 433 F.3d at 1013, citing *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir.1990).

> On the summary judgment record, a jury could reasonably conclude that Dr. Butler knowingly adhered to an easier method to treat Berry's pain that she knew was not effective. She had not identified an effective pain medication, nor could she explain Berry's pain, yet she rejected the obvious alternative of referring Berry to a dentist. A jury could find that she simply concluded that Berry could endure his pain until his transfer back to the DOC several weeks later, when Berry would be the DOC dentist's problem, not hers. It is hard to imagine that a doctor seeing a civilian patient, or a doctor in a prison having on-site dental staff, would respond in this way to persistent complaints of severe dental pain over a period of weeks, even in the absence of a "dental emergency." A basic dental examination is not "an expensive or unconventional treatment," nor is it esoteric or experimental. See *Ralston*, 167 F.3d at 1162. Such examinations are inexpensive and commonly sought immediately to address severe dental pain. Thus, Dr. Butler's refusal to permit Berry such a basic treatment option could be characterized as a "gratuitous cruelty" forbidden by the Eighth Amendment. See *id.* Where Berry made a modest request for treatment by a dentist, Dr. Butler's "obdurate refusal to alter [Berry's] course of treatment despite his repeated reports that the medication was not working and his condition was getting

**PLAINTIFF'S RESPONSE
TO DEFENDANTS' SUMMARY
JUDGMENT MOTION        - Page 21 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

worse", see *Greeno*, 414 F.3d at 654, is sufficient to defeat her motion for summary judgment.

*Berry* is remarkably on point here.  An inmate in a county jail had to rely on a medical contractor to provide relief from serious dental pain, but other than looking into his mouth and prescribing ineffective pain medications for two months, they did nothing in the face of serious pain. No referral to real dental care was made.  The jail medical staff knew they were not qualified to diagnose or treat this pain.  A root canal in each case was required when a dentist was finally engaged.  In *Berry*, the tooth was necrotic.  Here, there was irreversible pulpitis, and a need for a crown.  Both cases presented serious conditions and serious pain which even lay persons, like jurors, would know needed specialist care.

As to Mr. Robertson, while there was ultimately effort to obtain dental care, after two full months of suffering, it was only under the gaze of a litigation attorney demanding action.  The tort had already been committed.  Even then, it was too little too late to have avoided the violation of Plaintiff's constitutional rights, and left him with a dental problem of long duration.

xi.  Monell Liability

Vicarious liability under *respondeat superior* principles does not apply to the government agency in the context of a claim under 42 U.S.C. § 1983 context.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  However, if an official policy of the municipal corporation is the cause of a constitutional deprivation, the municipality can be held liable under § 1983.

The County, while having a contract for dental services with Conmed, Otto Declaration, Exhibit B, page 7, 10, provided no facilities for dental care. Otto Declaration, Exhibit D, pages 15,16.  There were no dental implements on site, and not even a dental chair.  The County also entered a flat rate contract for services, to be shed of the responsibility to pay for more.  This evokes an official policy which has directly resulted in the constitutional deprivation here.  Further, as developed above, the County confesses a policy of placing responsibility for care on the inmate, and his attorney, to seek a furlough.

Likewise, Conmed failed to advise its medical providers of its obligations to provide dental care under the contract.  Conmed likewise failed to provide adequate dental equipment.  Conmed

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile

set up an inefficient method to seek outside care, as reflected in the outside Services Request form ultimately used by Sue Stevens after the attorney letter was received. Conmed also chose who the medical providers were in implementing the contract, and knew there was no staff dentist. If *respondeat superior* liability does not attach to Conmed, Inc., under *Monell, supra,* then their policies, customs and practices should create liability.

While *Monell* clearly applies to prevent *respondeat superior* principles from application to th County, a municipal corporation, it does not so clearly apply to Conmed, Inc., a for profit corporation. Please see, *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 896 (N.D. Cal. 2013). in which a private prison health corporation was allowed to have Agent/Principal liability under a California state law for the same deprivations. Monell discussed at length the passage ot the civil rights bills, and focused on the constitutionality of extending reach of federal legislation over local governments. The case itself only held:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent. [emphasis added]

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). Conmed, Inc., is a private for profit business. Not being a local government, Conmed, Inc. does not come within the scope of *Monell*. For this reason, *respondeat superior* rules should apply to Conmed, Inc., if any of its agents are liable.

IV.    CONCLUSION

We respectfully request the court deny defendants' motion for summary judgment.

Dated this 6th day of November, 2016.

ANTHONY C. OTTO, WSBA 11146
Attorney for Plaintiff Robertson
P.O. Box 1368
Port Orchard, WA 98366
tony@anthonyotto.com
(360) 876-5566 - Telephone
(360) 895-8589 - Facsimile

**PLAINTIFF'S RESPONSE
TO DEFENDANTS' SUMMARY
JUDGMENT MOTION**          **- Page 23 -**

Anthony C. Otto
Attorney at Law
Post Office Box 1368
Port Orchard, WA 98366
(360) 876-5566 Telephone
(360) 895-8689 Facsimile